## EQUITABLE TRUST CO. OF NEW YORK v. CONNECTICUT BRASS & MFG. CORPORATION et al.

(District Court, D. Connecticut. May 20, 1925.)

No. 1488.

1. Judgment ⬅590(1) — Denial of claim of United States to priority held not a bar to assertion of trust.

Denial of a petition by the United States, asserting the right to priority of its claim under the statute, held not to bar it from subsequently seeking to establish a trust in property in the hands of the receiver.

2. Election of remedies ⬅7(3) — Filing of claim for value of property against insolvent held to bar recovery of the property.

The filing by the United States, under a general order for the filing of claims, made in a receivership suit against a corporation, of a claim for the value of property alleged to have been converted by the corporation, and the allowance of such claim, held an election of remedies, which barred it from later asserting the right to recover so much of the property as came into the hands of the receiver.

In Equity. Suit by the Equitable Trust Company of New York against the Connecticut Brass & Manufacturing Corporation and others. On intervening petition of the United States and defenses thereto. First defense overruled, and the second sustained.

John Buckley, U. S. Atty., of Hartford, Conn., and Alexander Holtzoff, Sp. Asst. Atty. Gen., for the United States, intervening petitioner.

Cummings & Lockwood, of Stamford, Conn. (Charles D. Lockwood, of Stamford, Conn., of counsel), for ancillary receiver.

Murray, Prentice & Aldrich, of New York City (William Roberts, of New York City, of counsel), for creditors' committee.

THOMAS, District Judge. The United States, as an intervening petitioner, prays for an order to impress a trust in favor of the government on certain raw copper that came into the receiver's possession, and to direct the receiver to deliver it to the petitioner, or, if sold, that the receiver be directed to turn over the proceeds of the sale. The matter is now before the court on a motion to separately hear and determine the issues raised by the first and second defenses to the petition, pursuant to the provisions of equity rule 29.

In an action to conserve the assets of the defendant corporation located within this jurisdiction, William H. Coverdale was duly appointed receiver on September 15, 1918. Thereafter, and on April 14, 1919, an order was entered by this court directing creditors to file their claims with the receiver and on or about January 17, 1920, the United States filed its claim in the sum of $343,588.18. The claim is based on the value of certain copper and spelter which the United States had delivered to the defendant corporation for the purpose of having the same manufactured into sheet brass and articles made of brass under agreements whereby the United States retained title to the copper and spelter delivered by it to the defendant.

On July 5, 1921, the United States present-

ed a petition to this court praying for an adjudication of priority under the provisions of § 3466 of the Revised Statutes. Among other things, the petitioner alleged that the value of the copper delivered by it was 26 cents per pound; that out of the total amount of copper delivered by the United States there was a "balance due the United States of 1,321,493 pounds of copper." The petition then alleged that the defendant had wrongfully "and improperly converted to its own use" the aforesaid copper, and that "although the Connecticut Brass & Manufacturing Corporation is indebted to the United States of America in the sum of $343,588.18, with lawful interest thereon, by reason of the wrongful conversion" of the said copper, and, although due demand had been made, neither that sum nor any part thereof had been paid. Whereupon the petitioner prayed for an order instructing the receiver to forthwith pay the claim of the United States in the sum of $343,588.18, with lawful interest, before paying any other debt of the corporation. Upon the presentation of this petition, the receiver and the creditors' committee duly moved this court to dismiss the same upon the ground that the United States was not entitled to any priority under the facts stated in the petition. The motion was granted, the petition dismissed, and on April 30, 1923, the ruling of this court was affirmed by the Circuit Court of Appeals. See 290 F. 712.

On December 2, 1924, the United States filed this its second petition, realleging its delivery of the copper and spelter for the purposes hereinbefore set forth, as well as the retention by the defendant of 1,321,493 pounds of said material. This retention is characterized as a conversion, in that the raw material had been unlawfully commingled by the defendant with other raw copper in defendant's possession. It is alleged in this petition that a large amount of this copper was wrongfully utilized for purposes other than the carrying out of the contract of the defendant with the United States, and that at the time of the appointment of the receiver 726,520 pounds of the same copper came into his possession. As already noted, the petition prays that it be decreed that this raw copper, or the proceeds thereof in the hands of the receiver, be impressed with a trust in favor of the United States, and that the receiver be directed to turn over the copper or the proceeds of the sale. To this petition the receiver, as well as the creditors' committee, interposed four separate defenses,

but the present motion addresses itself to the sufficiency of only the first and second.

In the first defense it is alleged generally that the matter presented by the petition is already res adjudicata by virtue of the order of this court on the former petition and the affirmance of that order on appeal. 290 F. 712. The second defense recites the filing by the United States of its proof of claim on January 17, 1920, for the full value of the copper, and alleges that no objection has ever been made to the claim, and that the receiver has admitted the validity of the claim. It then argues that the government's act in presenting its claim, and its admission by the receiver, constituted an election of remedies, which bars the petitioner from now asserting title to the alleged balance of copper in the receiver's hands.

[1] I am unable to agree with the claim that the action of this court on the former petition constituted in any sense an adjudication of the claim now presented by the United States. The only point there decided was that the United States had no right of priority in the payment of its claim. It had asserted such a right, and it had requested an adjudication respecting its right. That assertion was not based upon any claim of ownership in the property herein sought to be reclaimed, but upon the statute which gives to debts due to the United States a priority in insolvency proceedings.

[2] But the second defense raises a different question. It is claimed that the United States has elected its remedy and that it is concluded by its election. Accepting, as I must, for the purpose of this motion, the allegations of fact which are pleaded, and which are supported either by the actual proceedings in the case or by the stipulation of the attorney for the petitioner, it appears that the United States has, pursuant to a general order of this court, made in this action, filed its claim with the receiver for the full value of the copper, and that the receiver has admitted this claim. Some five years have elapsed since that claim was filed, and no one questions it, and no one ever has questioned it during that time. Disregarding the question as to whether or not that claim was in assumpsit or for damages in tort, the indubitable fact is that at this moment the United States is asserting and prosecuting a right to a distributive share of the assets of the defendant corporation up to the value of the claim filed by it, a claim which has been conceded by all parties in interest. That no formal adjudication has been had in the premises is due solely to the fact that

neither the receiver nor any other party in interest has challenged the validity of the petitioner's claim. For all practical purposes the United States stands in the position of one who has secured an adjudication of his claim by consent. It will not be seriously contended, I assume, that the United States is entitled to its distributive share of the assets, as well as to the return of the copper.

Whether the United States may recede from the position taken by it, and withdraw its claim, we need not discuss. The fact is clear that it has not done so. Its contention that its freedom of action is untrammeled by the record arises out of a misconception of the scope of the adjudication heretofore had on its petition for priority. The denial of that petition in no wise affected its status as a general creditor, a status which it had itself created by the filing of its claim. The denial of the remedy of priority, a remedy sought a year and a half after the filing of its claim, was not a denial of its right to a distributive portion of the estate, a right asserted and established by the filing of that claim. That right has never been abandoned, and its continued assertion clashes with the petition now under consideration.

The case, therefore, is not one where a party has mistakenly selected his remedy and failed. It is more analogous to the case of a party who has secured an adjudication in his favor, and then discovers that the pursuit of a different remedy would have netted a higher measure of damages. The doctrine of election then operates as a bar. Indeed, it is difficult to distinguish this case from In re Jacob Berry, 174 F. 409, 98 C. C. A. 360. In that case the claimant filed his proof of claim against the bankrupt for the value of the stock which the bankrupt wrongfully hypothecated. He thereupon filed a petition to reclaim the stock. It was held that he had made a binding choice of rights when he filed his claim as a creditor, and that he could not thereafter seek to alter his position to that of the owner of the stock and reclaim. Speaking for the Circuit Court of Appeals, Judge Ward said (page 410 [98 C. C. A. 361]):

"If the record in this matter showed that the petitioner made his claim without knowledge of all the facts, or even in ignorance of his legal rights to follow the certificates or their proceeds, the situation might be different; but it does not. On the contrary, the special master and the District Judge both found that he acted with full knowledge of all the facts. The situation he is now in is not due to his laches, or to any estoppel arising out of anything done to the prejudice of others, but to the fact that he has deliberately elected a remedy inconsistent with the claim he now makes."

No attempt has been made by the petitioner to avoid the effect of this decision. In both cases the right to reclaim rests upon an assertion of title in the claimant. In both cases the charge of conversion is made. In both cases the claimants are cognizant of all the facts upon which they assert their right. Why, then, should any distinction be made in the application of the rule? It is true that one matter arises in a bankruptcy proceeding, and the other in an equity action to conserve assets. But, as we are not now concerned with merely procedural matters, I cannot see any basis for a different treatment of identical issues.

The first defense to the petition is overruled, and the second defense is sustained. Decree accordingly.